## St. Louis, Iron Mountain & Southern Railway Company v. Enlow.

### Opinion delivered December 14, 1914.

1. Evidence—dying declarations—civil case.—Dying declarations are not admissible, except in prosecutions for homicide, where the cause of death is under investigation, and they are not admissible in civil cases even when the cause of the death of the declarant is one of the matters under investigation.

2. Evidence—civil case—dying declarations—res gestae.—In an action for damages for wrongful death, due to negligence, evidence of statements of deceased, in the nature of a dying declaration, explaining the cause of the accident is not admissible as a part of the *res gestae*, when made a week after the accident.

3. Appeal and error—prejudicial error—incompetent evidence—reversal.—Where plaintiff's case depends upon certain incompetent testimony which was erroneously admitted, the error will be held prejudicial and the cause reversed.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford,* for appellant.

1. Dying declarations are not admissible in civil cases. Nor was the so-called dying declaration part of the *res gestae.* It was made more than a week afterward. 87 Am. Dec. 176; 45 *Id.* 561; 48 Ill. 475; 39 Ga. 223, 99 Am. Dec. 456; 70 Ia. 130; 95 Ala. 461; 15 Johns. 286; 117 N. C. 27; Tiffany on Death by Wrong. Act, § 194; 4 Enc. Ev. 941; 6 A & E. Enc. L. (1 ed.) 104; 92 Ga. 337; 56 L. R. A. 360.

2. A verdict should have been directed for defendant. 107 Ark. 431.

*Hoeppner & Young* and *W. R. Donham,* for appellee.

1. The dying declaration was admissible. 108 Ark. 326; 64 *Id.* 236; 69 *Id.* 619; 73 *Id.* 594; 168 S. W. 1116.

2. There is no error in the court's charge. The instructions have been approved by this court. 108 Ark. 326; 163 S. W. 514; 168 S. W. 1116; See also, 65 Ark. 237-238, as to injury on public highways by running trains being *prima facie* negligence.

McCULLOCH, C. J.    The plaintiff's intestate, C. B. Emslie, while on or near the tracks of the defendant in the city of Little Rock, was struck by a moving train of cars and injured, from which injuries he died a few weeks later, and this is an action by the administrator to recover damages for the benefit of the estate and for the next of kin.

The injury was inflicted by a train of cars being switched along a track which runs through an alley in the city of Little Rock with brick buildings on each side. There are two tracks, and the one on which deceased was injured ran within about two feet of the brick walls of the buildings abutting on the alley. It occurred about 3 o'clock in the morning while it was dark and there were no lights of any kind in the alley. A string of five cars was being backed along the track for the purpose of spotting them at the warehouses where they were to be unloaded, and a brakeman was stationed as look-out near the end of the front car. He had a lantern in his hands and testified that he kept strict lookout for objects on the track and failed to discover anyone until he heard the cries of the deceased after the latter had been struck by the train. The foreman of the switch crew testified that he walked along the alley a short distance in front of the approaching cars for the purpose of superintending the spotting of the cars and that he did not see anyone in the alley. The other trainmen testified, and it appears from their testimony that a strict lookout was kept for persons on the track and that none was discovered until the distress cries of the deceased were heard when the train was immediately stopped. One of the wheels of the car struck the arm of deceased and pinched the flesh off from wrist to elbow, but no bones were crushed or broken or other injuries inflicted. Deceased was carried to a hospital where his wounded arm was dressed and he remained there until he died. Death resulted from tetanus.

There was no witness who testified that he saw deceased on the track and it is merely a matter of inference or conjecture as to when he went upon the track or the position he occupied. The testimony of the trainmen

is to the effect that they did not see him, and the conclusion to be reached from their testimony is that he was lying down on or near the track when the cars were backed into the alley, and that as it was dark at that place the man on lookout could not discover his presence.

(1-2)    The plaintiff introduced, over the objections of the defendant, testimony tending to establish a dying declaration of the deceased to the effect that he was walking along by the side of the track when the train struck him. The ruling of the court in admitting this testimony is assigned as error, and it is quite clear to us that this assignment must be sustained and the judgment reversed. The declaration was not admissible as a part of the *res gestae*, for it was not made until about a week after the injury. It is well settled that dying declarations are not admissible except in prosecutions for homicide where the cause of death is under investigation. *Haley* v. *State,* 99 Ark. 356. They are not admissible in civil cases even where the cause of death of the declarant is one of the matters under investigation. Tiffany on Death by Wrongful Act, § 194.

(3)    The testimony was very material, for without it we are of the opinion that there is not enough to sustain a verdict in plaintiff's favor, and therefore the admission of the testimony was prejudicial. The plaintiff failed to adduce any testimony at all, aside from the dying declaration, tending to show that deceased was in such position on or near the track that his presence ought to have been discovered if a lookout had been kept. So the dying declaration constituted the only evidence of the fact that deceased was walking along the track and in a position in which the trainmen keeping a lookout would have discovered him. According to the undisputed evidence, it was dark in the alley, and unless it be shown that deceased was standing up or walking along, there was nothing to warrant the jury in disregarding the testimony of the switchmen to the effect that they looked and saw nothing of him on the track.

There are several exceptions in regard to giving and refusing instructions, but as the judgment must be reversed

for the error indicated, we need not pass upon the correctness of those rulings.

Reversed and remanded for a new trial.