## WINFREY *v*. STATE.

### Opinion delivered July 4, 1927.

1.  ABORTION—DYING DECLARATIONS.—Dying declarations are never admissible, except in homicide cases, and in bastardy proceedings, as provided by Crawford & Moses' Dig. § 783.
2.  ABORTION—ADMISSION OF WOMAN'S DYING STATEMENTS.—In a prosecution under Crawford & Moses' Dig., § 2598, relating to the administration of drugs with the intent to procure abortion, it was error to admit testimony of dying declarations of a woman to whom drugs were alleged to have been administered, the crime charged being distinct from that of the use of drugs with the intent to destroy a child, under § 2358.

Appeal from Franklin Circuit Court, Ozark District; *J. O. Kincannon,* Judge; reversed.

*J. P. Clayton* and *J. D. Benson,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McHANEY, J. Appellant was convicted and sentenced to one year in the penitentiary and to pay a fine of $10 on a charge of abortion, under an indictment which, omitting formal parts, reads as follows:

"The said Gordon Winfrey, in the county, district and State aforesaid, on the 20th day of January, 1925, did willfully, unlawfully and feloniously administer and prescribe to one Eithel Volentine, a woman with a child,

before the period of quickening, drugs and medicines, with the willful, unlawful and felonious intent then and there and thereby to procure an abortion.''

From the judgment and sentence against him appellant has appealed to this court, and the principal error assigned for reversal of this case, if not the only one, is that the court erred in permitting the witnesses Joe Volentine and Mrs. Joe Volentine, to testify to statements made by Eithel Volentine a short time before her death, that appellant had given her a certain drug for the purpose of causing her to abort, and that appellant had intercourse with her some time in October, before her death in January, from which she became *enceinte,* on the theory that such statements were competent and admissible as dying declarations. The testimony of these two witnesses was objected to, and, on being overruled, proper exceptions were saved, and were preserved in the motion for a new trial. These objections and exceptions were well taken, not because the said Eithel Volentine was not *in extremis,* but because dying declarations are never admissible except in homicide cases, where the circumstances of the death of the deceased and the guilt or innocence of the party charged are the subject of the inquiry.

In the case of *Haley* v. *State,* 99 Ark. 356, 138 S. W. 631, Haley was indicted and convicted of the crime of rape of one Florence Brown, and her declarations prior to her death were admitted as dying declarations. In reversing the case this court said:

''Appellant was convicted of the crime of rape. The court permitted evidence of the dying declarations of the victim of the alleged assault to go to the jury. The Attorney General confesses that the trial court erred in its ruling. This presents the only question for our consideration. The confession of error must be sustained. 'Dying declarations', says the Supreme Court of Alabama, 'according to the unbroken current of modern authorities, are admissible only in cases of homicide, when death, with the circumstances attendant on it, and the guilty agent in producing it, is the subject of inquiry.'

*Johnson* v. *The State,* 50 Ala. 459; Greenleaf on Ev. (15 ed.) § 156; Wigmore on Ev. (3 ed. Bowlby), § 1432. We have no statute making the dying declarations of a victim of rape admissible as evidence. In the absence of such statute, it was error to admit them in the case at bar. It is not shown that the declarations were of the *res gestae.* The judgment is therefore reversed, and the cause is remanded for a new trial.''

In the case of *St. L. I. M. & S. Ry. Co.* v. *Enlow,* 115 Ark. 584, 171 S. W. 912, where the lower court had permitted the introduction of a dying declaration in a civil case, this court said: ''It is well settled that dying declarations are not admissible except in prosecutions for homicide, where the cause of death is under investigation.''

The court in that case cited *Haley* v. *State, supra.* The only exception made by our statute to the above rule, so far as we are advised, is § 783, C. & M. Digest, which is as follows:

''The mother shall be a competent witness in all cases of bastardy, unless she be legally incompetent in any case; and, if she be dead at the time of the trial, her declarations, made in her travail and proved to be her dying declarations, shall be evidence.''

The above rule with reference to abortion has not been changed.

In 1 C. J., p. 326, § 84, discussing the subject of abortion, it is said:

''At common law, dying declarations are admitted in evidence only when the death of the declarant is the subject of the charge and the cause of the death is the subject of the declarations, and, in the application of this rule, it is established by the great weight of authority that they are admissible in homicide cases only. Within the general rule just stated, where the offense defined by the statute consists of procuring or attempting to procure an abortion, without reference to whether or not the death of the woman is caused thereby, no ground exists in an abortion case for the admission of the dying declarations of the woman whose death was caused by the

abortion charged.   It is therefore held in such cases that the dying declarations of the woman are not admissible, unless the rule of evidence is changed by statute.''

This text is supported by a great many authorities. At § 85 the same authority says:

''In several States the dying declarations of a woman whose death resulted from an abortion or an attempt to procure an abortion on her have been made admissible by statute.''

But, as above stated, no such change has been made in our statute.

Appellant was indicted under § 2598 of C. & M. Digest, which is as follows:

''It shall be unlawful for any one to administer or prescribe any medicine or drugs to any woman with child, with intent to produce an abortion or premature delivery of any foetus before the period of quickening, or to produce or attempt to produce such abortion by any other means; and any person offending against the provisions of this section shall be fined in any sum not exceeding one thousand dollars, and imprisonment in the penitentiary not less than one nor more than five years. Provided, this section shall not apply to any abortion produced by any regular practicing physician for the purpose of saving the mother's life.''

Under § 2358, C. & M. Digest, the law is different with reference to the administering to any woman pregnant with a quick child any medicine or drugs, or shall employ any instrument or other means, with intent to destroy such child.

In 1 R. C. L., § 21, discussing the subject of dying declarations in abortion cases, it is said: ''As a general rule, dying declarations of the woman are not admissible against the accused, where the prosecution is for the abortion and not for the homicide of the woman.''

It necessarily follows from what we have said that the court erred in admitting the dying declaration, which calls for a reversal of this case.   The cause will therefore be reversed, and remanded for a new trial.   It is so ordered.