MARATHON OIL COMPANY v. SOWELL.

4-4025

Opinion delivered December 9, 1935.

*H. G. Ross, Hardin & Barton* and *Henry E. Spitzberg,* for appellant.

*Joe Horton* and *Evans & Evans,* for appellee.

McHANEY, J. Appellee, Robert Sowell, is the administrator of the estate of his late son, Montie Sowell. He brought this action as administrator, in which he and his wife joined, to recover damages against appellant and John O. Adney for the death of said intestate, caused by the operation of a truck driven by said intestate. It is alleged in the complaint that both Adney and Montie Sowell were employees of appellant, which is denied by the latter. Adney was operating and had for several years operated a distributing station at Booneville, sell-

ing appellant's products at wholesale. Montie Sowell, a young man 26 years old, was employed by him to drive his truck in making deliveries of appellant's products. He had been in such employment for several months. On the afternoon of March 20, 1934, decedent, under instructions from Adney, delivered a truck load of gas to the C. C. C. camp near Blue Mountain, some fourteen miles distant east of Booneville. About 7:30 in the evening, on his return trip, after passing through Magazine, going west on highway No. 10, at or near Scott Creek, some six miles from Booneville, the truck was turned over on the highway, throwing him therefrom to the ground, from which he received such severe injuries that he died about 2:45 A. M. that night in the hospital at Paris. The truck was a 1929 model "A" Ford, 1½ ton capacity. It had been bought new by Adney in December, 1929, and it had been used in the service all of that time, having run, according to the speedometer, about 35,000 miles. At the point of the accident, the road approaching Scott Creek from the east is down grade and curves to the north as it approaches the creek, and then, after crossing the culvert over the creek, curves back to the left or south, making an "S" curve in the road. Just west of the creek, where the new highway turns to the left, the old highway went straight forward. Montie Sowell was alone on the truck, and no person, as far as this record discloses, witnessed the accident. Several persons appeared upon the scene shortly after the accident, and they testified that they traced the tracks of the truck and found that some distance east of the culvert, instead of following the curve of the road to the right or north, the truck pursued a straight course up almost to the abutment of the culvert, and that the left wheels of the truck were almost off the south side of the highway, when there was a quick turn to the right and on to the culvert, which it crossed. Instead of taking the south curve, after crossing the culvert, the truck went straight ahead and went off the new road and onto the old road when it turned suddenly to the left toward the new road, where it turned completely over, alighting on its wheels with the front headed to the southwest and with the lights still on. The gravel was loose

and kicked up. They judged that the truck had turned completely over because the cab was demolished. A passing motorist picked up Montie Sowell and took him to Booneville, where he received treatment and was later taken to the hospital in Paris, where he died. He does not appear to have made any statement regarding the cause of the accident, although several witnesses said he was conscious.

Appellees based their action against appellant and Adney on the ground that Adney was an employee of appellant, and that Montie Sowell was also its employee, having been employed for it by Adney; that Adney, acting for himself and as agent and employee of appellant, was guilty of negligence in furnishing Montie a "defective and worn-out truck with which to perform his duties of his employment"; and that the latter was injured "by reason of the negligence of the defendants in permitting and maintaining the use of such a defective truck in its business." Appellant and Adney denied these allegations. They defended on the ground that Adney was an independent contractor of appellant, and that Montie Sowell was his employee, and that there was no relation between appellant and Sowell of either master and servant or principal and agent.

Trial to a jury resulted in a verdict and judgment in favor of appellees in the sum of $6,000. For a reversal of the judgment against it, appellant argues a number of assignments of error with much reason and force. In view of the disposition we make of this case, we find it necessary to discuss only one of them, for we are of the opinion that the evidence fails to show any actionable negligence which is shown to be the proximate cause of the injuries to and death of Montie Sowell. For the purposes of this decision, we assume without deciding that Adney and Sowell were both employees of appellant, and that the truck driven by the latter was in a worn and defective condition, and that the risk of operating it in such condition was not assumed as a matter of law. Even so, there is no evidence in this record that the condition of the truck caused the accident. Repeating the facts briefly, the undisputed evidence shows that the deceased was

driving the truck west, going down grade, as he approached an "S" curve across the culvert of Scott Creek; that he almost failed to make the turn as he crossed the culvert, where he sharply swung his car to the right; that he failed to take the turn to the left as he crossed the culvert, but permitted the truck to run off the road where it turned over. The evidence further shows that, after the accident, the truck was driven into Booneville on its own power, not steering perfectly because a bolt in the front spring had been freshly broken. The mechanic who examined the car found that the top of the spring bolt had been freshly sheared off, in the accident. There is no evidence that the truck was steering badly prior to the accident. On the contrary, one witness, Mr. Balkman, testified that the truck passed him shortly before the accident as he was driving with his wagon and team along the highway in the same direction, and that the truck showed no evidence of bad steering as it passed him. If presumptions are to be indulged in, and they are not, it is just as reasonable to presume that the method and manner of driving the truck was the cause of the accident as it is to presume that the defective condition of the truck caused it. It might have been caused by the speed of the truck in the loose gravel. It might have been caused by the negligence of the driver in failing to watch the road and to observe the curve which he was approaching on a down grade. It might have been caused by any number of reasons as well as the defective condition of the truck. The law, however, does not permit verdicts and judgments to rest upon speculation and conjecture. *Nat. Life & Acc. Ins. Co.* v. *Hampton,* 189 Ark. 377, 72 S. W. (2d) 543. It is the general rule in this State that in an action for personal injuries caused by the negligent conduct of another, no recovery can be had, in the absence of evidence showing it to have been the proximate cause of the injuries complained of. As stated by Judge HART in *Mays* v. *Ritchie Grocery Co.,* 177 Ark. 35, 5 S. W. (2d) 728: "It is also the general rule in this State that, in order to warrant a finding that negligence was the proximate cause of an injury, it must appear that the injury was the actual and probable consequence of the negligence and that it ought to have been foreseen in the

light of attending circumstances." Also, as we said in *Wisconsin & Arkansas Lumber Company* v. *Scott*, 153 Ark. 65, 230 S. W. 391, quoted with approval in *Alaska Lumber Company* v. *Spurlin*, 183 Ark. 576, 37 S. W. (2d) 82: "To constitute actionable negligence, there must be negligence and injury resulting as the proximate cause of it. Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue."

Here there is no evidence to show that the injury and death of Montie Sowell were caused by the alleged defective condition of the truck. For this reason the judgment must be reversed, and the cause remanded for a new trial.